I'll be reserving five minutes for rebuttal, which will be done by Co-Counsel Ms. Grantland. Okay, so you're going to do the opening and Ms. Grantland will do the closing. Exactly. I'm going to discuss two issues, basically the first two issues raised in the brief, which really fall into two areas, one federal involvement and the other reliance. Now, there really is no question in the case that the sheriff's deputies who came to the residence of Dr. Fry and Mr. Schaffer were working on behalf of the federal government. They were following up on a federal investigation and if there's any question, just ask Ms. Ping. She was the prosecutor in that investigation. Well, it's not quite that simple, Mr. Morris. As I read the record, the first time the Eldorado County Sheriff's officers visited the property, there was no federal DEA investigation that was open. Is that correct? That's correct. So then the question becomes, at some later point, months later, when the deputies came back, that was after there had been a raid on a grow operation run by some current or former employees of your client? Well, not quite, but they were involved. That's correct. Okay. And so they were there at the request of the DEA to conduct an investigation into what they knew about the activities of these other folks whose ranch had been raided? That's correct. Okay. Now that we're straight on the record, go ahead. Okay. No, but you see, the problem is that the record is not really clear on all this because there was no evidentiary hearing. Well, the record is not clear on what? Well, it's not clear on the extent of the involvement of particularly Detective Ashworth. We know that he was trained by the DEA to do aerial surveillance. We know that he did 25 overflights prior to going to see Mr. Schaefer and Dr. Frye at their residence, so that had there been an evidentiary hearing, there may have turned out that they were, in fact, working for the federal government prior to that. We don't know that. But isn't that speculation, and does speculation entitle you to an evidentiary hearing? No, speculation doesn't entitle you to an evidentiary hearing. What does entitle you to an evidentiary hearing is when there are conflicts in the facts and where the facts, if alleged, would establish a defense. You're entitled to – I mean, establish a proposition, you're entitled to an evidentiary hearing. What evidence was there in the record that these State officers had authority to bind the federal government? Well, I'm glad you brought that up because the word – you know, as I mentioned in the brief, the word estoppel is used in many different contexts. Estoppel, for example, in a commercial context where an agent has to have authority to bind the principal in order to make – bring an estoppel. But estoppel here doesn't talk about binding the federal government. In other words, the federal – if an authorized agent – Can't just do. If I could follow this out, Your Honor? Sure. In other words, if an authorized federal agent, say the head of the DEA walks over to Dr. Fry and says, your grow is legal, that doesn't change the law. That doesn't wipe out any prohibition that might be against what – the growing of marijuana. All that does is say that it's unfair to prosecute somebody when, in fact, they've been informed by a responsible official that, in fact, they can grow marijuana. But isn't that – that's an agency inquiry, is it not? Classic agency law. Is the speaker authorized to bind the principal? In a commercial sense, correct. But the binding here is not in the sense that the law is changed, but in the sense that the government forfeits the right to prosecute those who were informed that their conduct was legal. But your argument would be much stronger if it was a DEA agent who had visited the property. The problem that I have with your argument is that the speaker is a state law enforcement officer. Except for the – Let me finish the question. And you want us to infer that he was an authorized agent whose speech could bind the federal government for estoppel purposes. And that's where I've got – Okay. Two things. First of all, he was being used – you know, the Court can't blind itself to the fact that the DEA in Northern California uses local agents. You have all these cases coming before the Court, and this is – this is no secret. The DEA was using local agents because they don't have manpower to cover Northern California. The sense of using local agents to do investigation and authorizing those agents to bind the federal government are two separate inquiries. Yes, but if you're binding in the sense that you use in the commercial sense, you're right. But this is not a commercial issue. This is a question of fair warning. This is a question of whether or not the government can prosecute those who would advise – Now, let me get to the question you raised. Go ahead. Yeah. It is clear – this Court has already ruled in United States v. Ford that state agents who assist in a federal investigation are considered federal agents. No, that's not what we said in Ford. We said that for purposes of Rule 16 discovery, that we would treat the investigation reports and the incident reports of the San Francisco Police Department that were later used in a federal RICO prosecution the same way that we would treat an FBI 302 for purposes of whether or not they had to be produced. That's a very different question from agency. Except for the fact that in the course of that opinion, the Court discussed the fact that federal agencies use local state actors and said that it makes no sense not to treat them as federal actors when they are, in fact, working on the one investigation. There was no state investigation here. …of their offense report. Well, then you'd have – But that's a different issue, Counsel. I think Judge Rawlinson put it on the head. You've got two distinct notions here, and you're arguing the two interchangeably. And I don't think the law recognizes that. Okay. Well, in fact, there is no dispute that the officers were acting on behalf of the DEA. They were there. They were conducting investigations. I don't think Ms. Ping would disagree with that statement. Fine. Well, then why didn't she tell the district court that at the time? That's what I don't understand. So what? So what? Even if the state officers were investigating on behalf of the DEA, how do you make the leap that they were authorized to speak on behalf of the DEA in terms of the legality of the activities? The fact – if a – there were no different position than if one of the DEA came along with them and told them that what you're doing is fine. There are no different position. They are performing the function of a DEA agent in the middle of a federal investigation. That their salary is paid by the state is irrelevant under these circumstances. But our cases say exactly the opposite, that state actors, even if they're acting under the direction of the DEA, if they haven't been given the authority to bind the DEA, to speak on behalf of the DEA, if they haven't become special DEA agents by virtue of authority vested in them, how can they bind the DEA? Well, first of all, I would take issue with the court's statement that our cases say that. I haven't found a single case that said that a state agent working on behalf of the DEA isn't treated as a federal agent. I haven't found one, and I don't think the government cited any such cases. The government cited a raft of cases that say that state agents acting alone can't advise on federal law, which is the way it should be. Mr. Farris, let me move to the second issue on entrapment, which is reliance. And the district court looked at the patient forms that clearly say distribution of marijuana is illegal under federal law and I guess purport to distance your client from any suggestion by the patient that the doctor was urging a violation of federal law. Your Honor, murder is illegal, but self-defense is an affirmative defense. So if a person says that murder is illegal, that doesn't mean they can't act in self-defense. Now you're getting into medical necessity, and that's a different question. The question I'm asking you is reliance. And the district court thought that the existence of those forms was fatal to your argument that there was entrapment here. And the district court was wrong, because simply saying that marijuana is illegal does not mean that there isn't a medical necessity defense and doesn't mean that they can't reliance. See, in other words, when the officers came out there and said everything else. No, no. I got it. I'm getting to what you're getting at. The officers came out there and said, words to the effect, what you're doing is fine. Legal, whatever terminology they used, they assured that there wouldn't be a problem. And so did they encourage larger quantities to be grown? They encouraged them to continue doing what they were doing, which ended up being larger quantities. Again, we don't have an evidentiary hearing. The issue is whether or not the defense was deprived of the ability to present their evidence to the jury, not whether or not they proved entrapment by estoppel. One last thing. I've got about 25 seconds left. One last thing on the reliance on OCBC. Frankly, the only reason you can't rely on it is if there's a split in the circuits. It's not my favorite notion of logicalness, because that means that you'd have to look up 12 different circuits to see if anybody disagrees. But be that as may, that's where the Supreme Court's left it. The problem with that argument is that you've got gaps again. You've got about a four-month period where they were growing marijuana before any federal court had opined on this issue. You've got a period where they continued to grow marijuana after the Supreme Court decision came down, so that doesn't get you where you need to go. Well, it does in terms of the quantity, because if it was legal to do it for medical necessity during the period in which OCBC was good law, then you'd be under 100 plans, and then you wouldn't have the mandatory minimum. Okay. With that, I... Thank you, Mr. Moore. We'll hear from the government. Good morning, Your Honors. May it please the Court. I'm Ann Pins on behalf of the United States. A couple of issues, starting with the entrapment by estoppel. I think it's worthwhile to look at the record and figure out exactly what was on the record at the time that the district court made its pretrial ruling, because there's some reference in the defendant's brief that suggests that some of the statements that came later, the proffers by the defendant that got better over time as it got closer to sentencing, that some of those were actually in front of the district court at the pretrial stage, and they were not. What was before the court at the pretrial stage was the sentence, essentially, that the local sheriff's deputies, McNulty and Ashworth, were working on behalf of the federal government, the DEA, in interviewing the defendants about the other case, and then a separate statement that McNulty told Schaefer his medical marijuana activities were lawful. That was the entire proffer before the district court at the pretrial stage, at the motion stage. And essentially, it's just — it's a bare-bones conclusory allegation by counsel. It was not supported by any particular offer of proof. And, in fact, there was a tape in existence of the interview. I thought there was a declaration by Mr. Schaefer that alleged that he had been assured by Sergeant McNulty that what he was doing was okay. Those were put into the record later. Before or after the district court had ruled. I believe that's correct, that he — well, there's two issues. There's two — I mean, there's two individuals. There's McNulty and Ashworth. There were no declarations about Ashworth until the sentencing phase. Right. But I know I read at least one declaration, maybe two, that Mr. Schaefer signed. That's — those were offered at the stage of sentencing by entrapment after, I believe, the issues were decided. After what issues were decided? The motion in limine and the presentation of the defense and the — Ms. Pings, I'm not sure that's right. Okay. I'm looking at a declaration by Sergeant Timothy E. McNulty dated December 21, 2005, which is appended to, I guess it's the government's consolidated response to the defendant's motion to dismiss where he's denying the allegations in — made by counsel on behalf of Mr. Schaefer. Was there no declaration attached to the defense motion? There was a declaration from Mr. Serra stating that the facts that he asserted in the motion were true to his knowledge. There was no declaration from Mr. Schaefer until later. That's the declaration that also attaches the drug czars? Yes. Yes. So the record at the time the district court ruled was — is not the same as is represented in the defendant's brief, which includes those later declarations, which seem to get more — Add more facts. Add more facts as time goes on. The — I would just like to point out that the district court also made its decision on the entrapment by estoppel not by looking at any factual conflicts and, in fact, made no reference to Sergeant McNulty's declaration at all. And based it entirely on the proffer. And I think that's clear from his — the Court's ruling reflected on pages 183 and 189 of the excerpts of record that it was not a factual conflict that he resolved. It was purely based on the insufficiency of the proffer that there were any representations made about Federal law. And going to the reliance and the reasonableness of the reliance — observation, like a representation, and I hope I'm paraphrasing him correctly, that there is no case that says that a State official cannot bind the DEA when the State officer is investigating on behalf of the DEA. What's your — what's your response to that observation? I'm not sure that that's — I'm not sure there's a case that's exactly on point for a joint investigation. I think there are cases that the — the principle is the same when they're working jointly or someone is working in some collateral role with the Federal Government. It's — What's your strongest case to refute the argument that if a State officer is working on a task force, that officer gets Federal status for purposes of estoppel by entrapment? Well, we cited to the Spires case, which refers to a task force, and then there's numerous other cases, the Bredner case. What's your best case? They're all good? I'm sorry. I know I have to — I'm sorry. I'm not prepared for that answer at this point. I'm sorry. I apologize. I realize that's a classic question. I should have been prepared for it. Well, it's an important question. Yes. Because that's his main argument, is because these State officers were part of a Federal task force, they become empowered to bind the Federal Government. That's his argument. But that's not — that's not supported by the record. There was no task force. There were the — our system of government, there are State agents that exist and there are Federal agents that exist. They sometimes work in conjunction. It was not a task force. And something else — Well, you don't dispute that the State officers were acting on behalf of the DEA, do you? There — I think that's a conclusory statement. One fact that is — What's the fact? Well, there's one fact that I think is essential, which is misstated in the defendant's brief. The DA did not indicate that he would not participate in any prosecution. He only said he would not participate in the prosecution without further evidence. So all along, there is entirely the possibility, totally unacknowledged, that their activities were also in violation of State law. So — Well, but the fact of the matter is they were prosecuted Federally. That's ultimately — And the investigation was — they reported back to the DEA. That's correct. They didn't report back to the sheriff. They reported back to the DEA. They worked in conjunction. Yes, that's correct. Okay. So why doesn't that transform them into Federal agents? That's the question I'm asking, and that's the point opposing counsel is making. They were working for the DEA. They reported back to the DEA. They were prosecuted Federally. So why doesn't this become a Federal matter, such that these officers were authorized to bind the DEA? Well, a couple of things. The decision to prosecute Federally obviously is not made until the end of the investigation. The statement that they worked for the — that they were doing that one interview on behalf of the DEA occurred a year after their activities had begun. The fact that they worked together is not enough. The law requires more. What case? That's why I ask you. What's your case that says the fact that they worked for the DEA is not enough? It's not one particular case. It's all the cases that require a specific delegation and empowerment that says that gives the power. And I believe it was Your Honor that referred to it. Sometimes there is formal deputization, that none of these facts are present. There was no explicit formal empowering to these sheriffs to give this information. And the information was given in a context where the feds are enforcing Oakland Cannabis Buyers Club in San Francisco, and where they're there to interview them about other people that are being prosecuted federally. So the — and State and Federal law are vastly different at this time. And the idea that this reliance was reasonable is not — is not borne out by the record or the context. I — As I gather, the district court thought that the weakness in the defendant's case was that they could not identify a specific Federal agent that had directed this? Is that an accurate statement? The statement was that the defendants had failed to identify a Federal officer who had given them the — told them that their conduct was permissible under Federal law. So it's two prongs, a failure to mention and specify Federal law, and that there was the failure to identify someone who was actually empowered. That's the district court's ruling. Okay. With respect to the Oakland Cannabis Buyers Club, I would point out something else from when we're reviewing the actions of the district court in the context of over 43 pretrial motions, many filled with conclusory allegations, that in that context, when the defendants made their arguments about the Oakland Cannabis Buyers Club case, they asked for a motion to dismiss. They asked for mistaken reliance on judicial opinion instruction. They asked for different motions in limine. They never asked, and they never proffered, for the ability to present a necessity defense under Aguilar, which is, even in this Court's opinion, was acknowledged it said that if the government had chosen to proceed criminally rather than by civil injunction, that defendants could have presented an Aguilar defense in due course. That is not ever what the defendants asked for. They asked for reliance on State law. They, in their motion for jury instructions, they attach numerous instructions, none of which are for the same necessity defense that's referred to in the OCBC case. And that's Exhibit B to their motion, which is not excerpted in the record. But it, I think, shows what was before the district court, which was old jury instructions from the Rosenthal case, none of which included specifically a necessity defense as defined even under the OCBC decision that they are saying that they should have been allowed to. But if the necessity defense isn't based on medical necessity, what is it based on? I don't understand what you just said. Well, there was the – this issue is fairly complicated, and I'm looking at different periods of time and that type of thing. What the Ninth Circuit said was essentially what this Court said was to the district court, no, your injunction is overbroad. And, of course, injunctions are different than interpreting criminal statutes. There's the area for equitable relief. Let's go back to necessity. Okay. I'm sorry, Counsel. I just don't understand your argument. There's one necessity defense here, which is medical necessity. Right. And they never asked for that. The record will show they asked for that OCBC, its temporary pendency, should have allowed them a motion to dismiss, that it should have allowed them to present reliance on State law, that it should have allowed them to present mistake of law defense, that it should have allowed them to – But those aren't necessity defenses. The classic necessity defense is I put a gun to your head and tell you to go rob the bank or I'm going to kill you or your family. And so the law recognizes that maybe we're going to allow you to defend against the bank robbery charge. That's exactly my point. They never asked for a classic necessity defense. They cited to OCBC and said, so based on that, you should dismiss our indictment. Marijuana was totally legal in that timeframe, which, of course, that's not what it says. They said, well, if you want to dismiss our indictment, you should let us introduce reliance on State law as our defense. Since this case was pending, you should let us introduce an instruction from Rosenthal about mistake of law in fact. They never asked for the – or proffered anything about a defense or instruction that they examined all the options, that there were no legal alternatives, that they weighed the – all the factors laid out in Aguilar or even ultimately from the line of cases, even ultimately defined by the district court. That defense that the district court went back and remanded, they never proffered that. They never said let us present that because they couldn't and because – and the to do rather than what they specifically asked for. With respect to the – I guess I should resist this temptation, but it's difficult. The allegation that there was information not provided to the court that was concealed from the court by the prosecutor, I would just direct the Court to the transcript of the colloquy with the district court and particularly the excerpt of record page 8 and page 13 makes it perfectly clear that the discussion is about Special Agent Keefe and the investigation of these particular defendants and not about the involvement in the interview or investigation of the other defendants. And if there's no further questions? The involvement of the interview regarding the raid on the ranch, is that what you're referring to? Yes. Okay. All right. Thank you. Anything further? Thank you, counsel. Ms. Grantland. May it please the Court. First of all, as regard to the state agency, I think the most important thing is what he admitted that he was working as an undercover officer for the DEA, even though he was in his role as a sheriff. He said, so the relationship we developed was for that purpose, so I could solicit information from them. Undercover as he identified himself as a local law enforcement officer. Right. But undercover, he said. But he never represented himself as being a federal official then, based on your representation. If he was undercover in his capacity as a state official, then he never represented himself to be a federal official, according to your version of that. He told my client when he came out to interview them in August of 2000 that he was there on Because of the raid on the ranch in August. Because of the federal investigation he was working on, they were questioning them about the Shartnack case. The Shartnack case is the raid on the ranch, correct? No, your Honor. It's someone else. Well, I thought that was the reason they came out in August. Came out to, it's a raid on someone else's property. Shartnack was someone they came out to invest, to interview Schaefer and Fry about Shartnack. Right. Okay. So what. And at that. I mean, that's in, I assume that's at the request of the DEA, right? Correct. Part of their task force. Correct. Yeah. But the language you relied upon just now, you said that the testimony was he was working undercover in his capacity as a deputy sheriff on behalf of the DEA. So by definition, if you're working undercover, you're not blowing your cover by saying I'm really working for the DEA. So how could there be a representation on behalf of the DEA if he didn't even reveal that he was working on behalf of the DEA? There is a strict entrapment case, not entrapment by estoppel, called Davis, which says the government cannot make use of an informer and then claim disassociation. The federal government had sent this county sheriff out to work undercover. And when we're talking about an informer, we're talking about an undercover officer. I understand, Your Honor, but sometimes informers or undercover officers do the same function and they're working on behalf of a principal, who in this case is a DEA. So is your, let me see if I understand. Your theory is that a law enforcement officer identifies himself as a deputy sheriff, but he's going to report back to the DEA whatever he does? Well, he stated in his testimony that he was working basically in undercover capacity as a police officer. In other words, he was... I'm sorry. Is your theory that he's an informer when he does that as opposed to an investigator? He's an agent. He's an agent in fact, and he's an apparent agent because he states to Frye and Schaefer that he's there on behalf of the DEA conducting a federal investigation. So they had reason to rely on that. I thought his testimony was the reason they sent me and McNulty out there was that we knew Schaefer and Frye, and therefore they might talk more freely to us. Well, they did say that. McNulty in his affidavit said that his relationship was designed to entice them into making incriminating statements. So they were there working two sides of the fence, basically. They were there encouraging them and reporting back to the DEA. And that's what's different. Thank you very much, Ms. Grant. Your time is up. It's just argued as submitted.
judges: Fletcher B. , Tallman, Rawlinson